A. & W. B. CRINKLEY v. B. I. EGERTON.

*Vendor and Vendee—Landlord and Tenant—Mortgage.*

1. Where land is sold on credit, and a mortgage is executed by the vendee to the vendor upon the property to secure payment of the installments, the vendor, as mortgagee, has the right of possession. Hence it is competent for the parties to contract that the possession shall be held by the purchaser till payment made, and that in consideration thereof the relation of the parties shall be that of landlord and tenant  Such contract not being oppressive, nor against public policy nor any statute, the Courts cannot restrict the freedom of contract by declaring it invalid.

2. In such case the landlord's lien for rent takes priority of a mortgage for advancements, especially when the parties contract that the landlord's lien for rent shall be retained.

3. When no exception is made below that the mortgage and contract was not recorded, and it does not appear how the fact was, the exception cannot be taken for the first time in this Court. Every presumption is in favor of the correctness of the proceedings below. It devolves upon the appellant to assign error in apt time.

BURWELL, J., dissents *arguendo*, in which SHEPHERD, C. J., concurs.

CIVIL ACTION, tried at Spring Term, 1893, of WARREN Superior Court, before *Hoke, J.*

The plaintiffs claim the proceeds of certain crops, and the only question involved is the construction of a contract, a copy of which is as follows:

"Contract made December 30, 1887, by and between B. I. Egerton, of Macon, Warren County, N. C., of the first part, and Major Williams (a colored man), of Warren County, N. C., of the second part—

"Witnesseth, that said B. I. Egerton has leased to the said Major Williams for a term of ten years (beginning from this day) his tract of land lying in Warren County, N. C., known as the William and John Powell tract, adjoining the lands of S. P. Arrington, Mrs. Emma Egerton's heirs, and others, and containing sixty-six acres; the said Major Williams to pay the said B. I. Egerton, on or before November 1 of each year, beginning November 1, 1888, and continuing to the termination of this lease, three bales cotton (lint), to weigh each 400 pounds, making a total of 1,200 pounds lint cotton, to be paid as rent for each of the ten years.

"The said B. I. Egerton agrees to and with the said Major Williams, *and as an inducement* for the said Williams to pay the rent promptly each year as it matures, that whenever he has been paid as much as six hundred dollars ($600), with interest on the same from this day at eight per cent., as rent on the said tract of land, that this lease is to terminate, and

that he will make to the said Major Williams a good and
sufficient deed in fee simple to the said tract of sixty-six
acres of land, but the said Major Williams shall lose the
above option if he fails to pay the said B. I. Egerton the rent
of 1,200 pounds lint cotton each year. In order to ascertain
when the said $600 and interest has been paid, the said B. I.
Egerton is to keep a correct account of all rents paid to him
by the said Williams.

"This paper-writing is to be considered as a rent bond, and
all crops that may be made on the said tract of land are
bound for the said rent of 1,200 pounds lint cotton, as in
cases of other agreements for rent between landlords and
tenants.

"In witness whereof, the said B. I. Egerton and Major Wil-
liams have hereunto affixed their seals, this December 30,
1887.          (Signed)   B. I. EGERTON.          [SEAL.]
               (Signed)   MAJOR × WILLIAMS.   [SEAL.]
Witness: (Signed)   W. G. EGERTON."


The plaintiffs contended that the above instrument created
the relation of vendor and vendee between the defendants
and Williams, but the Court held that it created the relation
of landlord and tenant between them, and plaintiffs excepted
and appealed from the judgment rendered.

*Mr. T. T. Hicks,* for plaintiffs (appellants).
*Messrs. Batchelor & Devereux,* for defendant.


CLARK, J.: The instrument is in all respects a valid lease
of land for ten years at a stipulated rent of 1,200 pounds of
lint cotton per year, but on condition that on the payment
of rent to the value of $600, and interest, and as an induce-
ment to the prompt and punctual payment of the rent, the
lessor will thereupon make a conveyance in fee to the lessee
of the land. There is nothing in morals or in law which

prohibits or restricts the power of contracting so as to render this invalid as a lease until upon the performance of the condition it shall·become a sale; and·being a valid lease, the landlord retains his statutory lien on the crop for the rents. There is naught which shows an intention of the parties to release it. On the contrary, there is an explicit agreement that "all crops that may be made on said tract of land are bound for said rent of 1,200 pounds lint cotton, as in other agreements between landlord and tenant." The intent to retain the landlord's lien was a moving inducement to this. form of contract, which the parties had a legal right to enter into.

It is true that in *Puffer* v. *Lucas*, 112 N. C., 377, the Court held that, *as between the parties*, if the lessor attempted, after sundry payments made, to declare them forfeited and to retake possession of the property, the Court would, in equity in such case, hold the contract a mortgage and direct an accounting and sale as on a foreclosure. And, so it would here as to this land, should the landlord attempt to resume possession of it. But it was not held in *Puffer* v. *Lucas*, *supra*, that the lessor could not elect to let the lease remain in force and to collect the installments of rent by suit. Indeed, it approves *Foreman* v. *Drake*, 98 N. C., 311, which had held a contract, somewhat like the present, a contract of hiring and not a conditional sale. Nor, here, is there anything to prohibit the lessor electing to permit the lease to remain in force and collect his installments out of the crops by virtue of his landlord's lien. In both cases, it is only when the lessor elects to put an end to the contract of lease and resume possession of the property that the Court of Equity will hold him to account and settlement, as upon a proceeding to foreclose a mortgage. Of course an assignee of the lessee, either by purchase from him or by purchase at execution sale, would have the same right as the lessee to call for an accounting.

.  A person may so use his own property as not to injure or infringe upon the rights of others, which society undertakes to protect.   Upon this principle, one has the right and power to dispose of his property, when and how he may elect, if the law, for sufficient reason, has not declared the contract illegal, immoral or contrary to public policy, and therefore void.   Neither does any express provision of a statute, nor any reason founded upon public policy, prohibit the fair surrender of a contract of a purchase by a vendee and a voluntary change of his position to that of lessee without even a surrender of the possession.   *Taylor* v. *Taylor,* 112 N. C., 27. Why should the converse of this proposition be hedged about with any restrictions except such as are plainly intended to prevent inequitable oppression, such as may ensue where the lessee is not allowed to retain possession until the time for the performance of the condition arrives.

This view is in consonance with the real intent of the parties, and especially reasonable since mortgages on crops of future years being invalid (*Loftin* v. *Hines,* 107 N. C., 360), the owner of land would not sell it, on credit, if he must part with all liens upon the crop.   This lien being only for rent does not come under the evil of a mortgage for the whole crop for future years, which is denounced by *Loftin* v. *Hines, supra.*

This case also differs from *Puffer* v. *Lucas, supra,* in that there were in that case no rents or crops issuing out of the leased property upon which the lessor possessed a lien by virtue of the statute.   While the Court, with some hesitation, held in *Loftin* v. *Hines* that a mortgage upon the crops of future years was invalid, for the reason there given, there is nothing in that decision which restricts the freedom of contracts, so that ' a vendor of land who takes a mortgage on the land to secure the price may not stipulate that, until the mortgage is paid, the relation of the parties shall be landlord and tenant, to the extent that the landlord shall have his lien for the rent,

to be applied on the debt. This is because the mortgagee of the land, having the right of possession, may stipulate that the mortgagor may keep possession only on rendering rent. There is nothing oppressive in this when the rent is applied on the debt. This gives only a landlord's lien for rent, and not a mortgage on the whole crop, which is forbidden in *Loftin* v. *Hines,* in return for yielding possession. Such contracts are very common, and serve a most useful purpose. The Court, in the absence of oppression or grave reasons of public policy, cannot interfere with the freedom of all persons to make their own contracts. *State* v. *Moore,* at this term. The cases of *McCombs* v. *Wallace,* 66 N. C., 481 ; *Parker* v. *Allen,* 84 N. C., 466 ; *Hughes* v. *Mason,* 84 N. C., 472; and *Killebrew* v. *Hines,* 104 N. C., 182, relied upon by plaintiff, are the reverse of this and have no application. Those cases were contracts of bargain and sale of land, with a provision that in case of a failure by vendee for a specified time to comply with the terms of sale, the contract should be void and the vendee should pay rent or a forfeit. The Court, of course, held these to be contracts of sale, and as to the first three cases, held that, there being a dispute as to the forfeiture, the Superior Court had jurisdiction. There being an equity, the Justice of the Peace could not administer it, and summary ejectment would not lie. As to the last case, it was held that the mortgagor could not upon default made oust the lien upon the crop given to another by mortgagee for advances, while that relation existed. There was no stipulation in that case, as there is in this, reserving landlord's lien for rent *ab initio,* and to elect to assert it after default made was unjust to the party who had made advances. These were cases of sales with a power to resume possession upon default made. Such have always been decreed mortgages, but until the vendor elects to move they are deeds of bargain and sale, and the bargainor has no lien upon the crop. While in them it was held that there being an equity in the lessor,

the Justice of the Peace could not summarily eject under *The Code*, § 1766, it was not held that the parties could not by their contract reserve the landlord's lien for rent under section 1754. *Taylor* v. *Taylor*, 112 N. C., 27, is equally inapplicable. It merely holds that when the relation of the parties is *simply* that of vendor and vendee, mortgagor and mortgagee, there is no landlord's lien for rent under section 1754, because there is "no agreement" reserving rent or creating the relation of landlord and tenant.

In the present case we have the relation of lessor and lessee established by the express contract of the parties. They had a right to so contract. Until the lessor attempts to retake possession, that relation continues. The lessor, by virtue of the nature of his agreement, and its express terms, retains the statutory lien upon the crops. There is no exception taken that the contract between Egerton and Williams was not recorded. Even if registration were necessary as to plaintiff, still, there being no exception, the presumption of fact is to be taken most favorable to the appellee. Such exception could not be taken for the first time in this Court, and, in fact, was not made either here or below.

His Honor correctly charged the jury that the instrument created the relation of landlord and tenant between Egerton and Williams, and that by virtue thereof Egerton had a lien on the crop for rent and advances out of the crop of 1891 superior to the agricultural liens held by the plaintiffs. *The Code*, § 1754.                                    No Error.

BURWELL, J. (dissenting): It is conceded that the crop which the plaintiff seeks to recover of the defendant was grown by one Williams upon land of which he was in possession. The plaintiff claimed the property by virtue of duly registered mortgages thereon made to him by Williams for advancements of supplies. The validity of plaintiff's liens was admitted, but defendant alleged that his *statutory* lien

for rent (*The Code,* § 1754) was superior to those of the plaintiff because Williams was his tenant.

To prove that Williams was his tenant, and also the amount due for rent, he introduced the contract between himself and Williams, under which the latter held the land when the crop was grown and when plaintiff's mortgages or liens were made. He did not show that it was registered. It seems to be decided by the Court that that contract created between the defendant Egerton and Williams the relation of vendor and vendee, or, at any rate, that it vested in Williams an equity or right to call for a title when he had fulfilled his part of that contract.

The rule of interpretation laid down with so much emphasis in the late case of *Puffer* v. *Lucas,* 112 N. C., 377, makes any other conclusion impossible, if that decision is to stand as an authority to guide us.

Hence, the relation of Egerton to Williams was not only that of landlord and tenant, but also that of vendor and vendee.

In *McCombs* v. *Wallace,* 66 N. C., 481; *McMillan* v. *Love,* 72 N. C., 18; *Parker* v. *Allen,* 84 N. C., 466; *Hughes* v. *Mason,* 84 N. C., 472, it was decided that section 1766 of *The Code* has no application to cases where the relation of vendor and vendee exist, although for some purposes the latter may also be a tenant in contemplation of law. Those decisions are founded upon the idea that if the tenant has an equity in the land, that section has no application—that he is not a tenant and his vendor is not a landlord within the meaning of that section.

Now, in *Taylor* v. *Taylor,* 112 N. C., 27, we decided that whenever the relation of the so-called landlord and tenant was such, by the terms of their contract, that, under the rule laid down in the cases cited above (which we there referred to), section 1766 had no application to any controversy about the possession, neither could section 1754 apply to any controversy about the rent. In other words, we distinctly affirm

in *Taylor* v. *Taylor, supra,* that if such a relation existed as would prevent the recovery of the land under section 1766, the owner, or landlord, or vendor—call him what we may— could have no statutory lien for "so-called rent" under section 1754.

Upon careful consideration of these authorities (*Taylor* v. *Taylor, Puffer* v. *Lucas* and *McCombs* v. *Wallace, supra*), I cannot see how it is possible to escape the conclusion that the defendant has no statutory lien under section 1754 on the crop in controversy. He neither asserted nor attempted to prove any other right to hold it.

If it be contended that, though the defendant had no right to take and hold the crop by virtue of a lien under section 1754, the contract itself gave him a right to so take and hold it, the reply is that if he proposed to establish a right arising out of that instrument which would be better than plaintiff's title, it was incumbent on him to prove not only the existence of this contract, but that it was registered before plaintiff's mortgages. Between Egerton and Williams the so-called lease was valid without registration, but, considered as a lien on the crops of successive years in favor of the former, it could have no validity against the plaintiff, who also claimed under Williams, unless it was registered before plaintiff's mortgages. It was the duty of the defendant to prove that the contract was registered, if he wished to assert title under it as a lien or mortgage.

The interjection of the relation of landlord and tenant, with its statutory lien and peculiar legal remedies, into the relation of vendor and vendee, is such a blending of inconsistent principles that it is open to the objection of Lord BROUGHAM as being "against the science of the law," and will, I greatly fear, lead to much confusion and uncertainty. I think it better to adhere to well defined principles.

SHEPHERD, C. J.: I concur in the dissenting opinion of Mr. Justice BURWELL.