### MARGARET E. McLAURIN v. W. B. McINTYRE.

(Filed 2 December, 1914.)

**1. Landlord and Tenant — Justice's Court — Court's Jurisdiction — Title to Lands—Superior Court.**

The jurisdiction conferred by the landlord and tenant act upon justices of the peace does not obtain where the title to the land is in dispute; and when, in the course of the trial, it appears that the matters involved do not fall within the jurisdiction conferred in these respects, the justice should dismiss the action; and upon appeal, the Superior Court, acquiring no further jurisdiction than the court wherein the action was commenced, may not proceed with the trial.

**2. Same—Mortgage—Fraud—Equities.**

> The mortgagor and mortgagee having agreed after the latter had acquired the lands at a foreclosure sale, under a paper-writing whereby the mortgagor was given another opportunity to purchase upon his payment of rent and the performance of certain other conditions, the mortgagee brings his action before a justice of the peace in summary ejectment, wherein a controversy arose, under conflicting evidence, as to whether the defendant had relinquished his rights under the paper-writing, or had executed another writing wherein he became merely a tenant, concerning which the defendant contended, upon competent evidence, that he had not signed, or had signed it in ignorance of its terms, or through fear or by coercion. *Held*, the controversy involved the disputed title to real property, out of which certain equities arose, and not being within the jurisdiction of the justice of the peace, was properly dismissed by him; and, further, the Superior Court acquired no jurisdiction on appeal to determine the controversy *de novo*.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Shaw, J.,* at June Term, 1914, of SCOTLAND.

This is a proceeding in summary ejectment under the landlord and tenant act, begun before a justice of the peace and heard on appeal in the Superior Court.

In 1881 L. B. McLaurin sold the land in controversy to the defendant for $1,000, of which $200 was paid in cash and the remainder secured by mortgage on the land.

The defendant failed to pay the debt, and in 1894 the land was sold under foreclosure proceedings and bought by said L. B. McLaurin, to whom a deed was regularly executed.

The defendant was ousted from the land, and on 25 April, 1895, the following paper was executed by the parties:

NORTH CAROLINA—Richmond County.

I have rented to W. B. McIntyre the place on which he now resides (and which I own) for the year 1895. He desires to redeem the said place, and I agree with him that if he pays this year's rental as per contract already made, at the time it becomes due, and then pays me the rental due for five (5) consecutive years to an amount which will equal eight (8) per cent interest on the amount due me on the place at the time of the purchase thereof made by me at the commissioner's sale made by order of the Superior Court of Richmond County, I will give him a chance to redeem the same at $1,500 and said interest. It is especially stipulated that if the said McIntyre fails in any payment above set forth, then his said tenancy is to be at an end, and he thereby agrees to surrender said lands to said McLaurin or his heirs and assigns; and hereby waives all notice of the end of his tenancy, and the said McLaurin is to

have all the liens now given to landlords for the performance of the contract. I give to the said McIntyre.the privilege to clear any land on said place and to use the wood.

25 April, 1895.                         (Signed)    L. B. McLaurin.

I accept the above on the foregoing terms.

25 April, 1895.                         (Signed)    W. B. McIntyre.

L. B. McLaurin died in 1898 and the plaintiff claims to be the owner of the land under a deed from his executor.

The plaintiff offered evidence tending to prove that the defendant executed to her a rental contract for said land in 1901, and that he had been in possession thereof since that time as her tenant, paying rent.

This was denied by the defendant, who claimed that the amounts paid by him were on the contract of purchase.

The court found as a fact that the title to real estate was in controversy, and dismissed the action, and the plaintiff appealed.

*Edward H. Gibson and Walter H. Neal for plaintiff.*
*G. B. Patterson and Cox & Dunn for defendant.*

ALLEN, J. The right of the owner of land to recover possession before a justice of the peace against one who has entered into a rental contract, and the limitations upon the right, are clearly and accurately stated by *Justice Hoke* in *Hauser v. Morrison*, 146 N. C., 249. He says: "The authorities of this State have established the principle that the remedy by summary proceedings in ejectment given by the landlord and tenant act (Revisal, sec. 2001 *et seq.*), is not coextensive with the doctrine of estoppel arising. where one enters and holds land under another, but is restricted to the case expressly specified in the act, and where the relation between the parties is simply that of landlord and tenant, and when, on the trial of such a proceeding, it is made to appear that the relation existing is that of mortgagor and mortgagee, giving the right to an account, or vendor and vendee, requiring an adjustment of equities, a justice's court has no jurisdiction of such questions, and the proceeding should be dismissed. . . . And it is equally well settled that the jurisdiction does not extend to the relation of mortgagor and mortgagee and vendor and vendee, in which, although the mortgagor and vendee may technically be tenants at law, they are viewed in equity as the owners of the estate, and are allowed, in order to avoid the circuity of letting judgment go and then going into equity to enjoin the execution, to set up in one action under our present system their equitable title in defense to any action which may be brought to recover the possession. . . .

"There are decisions here and elsewhere to the effect that a mortgagee of property, after default, and a vendor, under an executory contract,

may at times rent the property to the mortgagor or vendee in possession, as in *Crinkley v. Edgerton,* 113 N. C., 444, and that such a lease will, under certain circumstances, be upheld so far as to give the lessor the benefit of a landlord's lien as against a claim by outsiders. But these cases and the principle upon which they rest do not go to the extent of depriving the mortgagor or vendee occupying the property of his right to account and adjustment; or of conferring on a landlord under such a contract the right of summary proceedings in ejectment, which, as stated, applies only when the simple relation of landlord and tenant exists between the parties."

It is also held in *Boone v. Drake,* 109 N. C., 82, that the jurisdiction to determine whether there has been an abandonment of a contract of purchase is in the Superior Court, and in *Cheese Co. v. Pipkin,* 155 N. C., 396,. that the jurisdiction of the Superior Court on appeal from a justice is entirely derivative.

In *Boyett v. Vaughan,* 85 N. C., 365, the Court said in a unanimous opinion: "It is the jurisdiction of the justice of the peace which, on appeal, gives jurisdiction to the Superior Court, and of course if the justice had no jurisdiction, the Superior Court could have none"; and again in *Ijames v. McClamroch,* 92 N. C., 365: "The jurisdiction of the Superior Court in appeals from justice's courts is entirely derivative. If the justice in such cases has no jurisdiction of the action, the Superior Court can derive none by the appeal."

Both of these cases were cited and approved in *Robeson v. Hodges,* 105 N. C., 49, in an opinion written by *Chief Justice Clark,* in which he quotes from the first that "It is the jurisdiction of the justice of the peace which, on appeal, gives jurisdiction to the Superior Court, and, of course, if the justice had no jurisdiction, the Superior Court could have none, and, therefore, by allowing an amendment in the transcript, which enlarges the cause of action beyond the jurisdiction of the justice it must necessarily oust itself of jurisdiction"; and the same learned judge concurred in the opinion written by *Chief Justice Furches* in *S. v. Wiseman,* 131 N. C., 797, in which it was said: "In cases where bills are found in the Superior Court, its jurisdiction is original. But in cases of appeal from justices of the peace its jurisdiction is derivative, and it has no more or greater jurisdiction than the justice of the peace had; and if the justice had none, the Superior Court had none."

If these principles are applied to the facts in the record, a statement of the questions involved in the appeal is sufficient to demonstrate that the justice did not have jurisdiction and that the action was properly dismissed.

(1) Is the plaintiff a purchaser for value? This is at least in controversy, as her own testimony may mean that she paid nothing for the

land, but that it and three other tracts were allotted to her as a part of her husband's estate, to which she was entitled, at a valuation of $3,400.

(2) Is the paper-writing of 25 April, 1895, a contract to convey, or an option?

(3) If a contract to convey, has there been an abandonment of the contract by the defendant?

(4) If a contract to convey, and there has been no abandonment, what payments have been made thereon?

(5) If an option, was the writing at the foot of the paper, "I accept the above on the foregoing terms," intended by the parties as an acceptance of the offer to sell?

(6). If not, has there been an acceptance since that time by payments made by defendant?

(7) If an option, and the offer to sell has been accepted, has the defendant abandoned the rights acquired thereunder?

(8) If there has been an acceptance and no abandonment, what amounts have been paid by the defendant?

(9) Did the defendant execute the paper spoken of as the rental contract under which the plaintiff claims?

(10) If so, was there any imposition upon him?

There is ample evidence on the part of the plaintiff that the defendant did sign the rental contract, that it was read to him, and that the transaction was open and fair; but the defendant testified that it was not read to him, and that he did not know what was in it.

It was in evidence that the defendant is ignorant, and that the paper was prepared by the agent and attorney of the plaintiff in South Carolina, and executed in his office there.

The defendant further testified in reference to this paper: "I have never made any settlement with Mrs. McLaurin for rent of this land. I cannot see the paper you have handed me without my specks. I have not got them with me. I am 60 years old and I can't read it, because I can't see it. I can read and write a little bit. The signature to the paper looks like my own. It kinder looks like it. I would not swear to it. If I signed it, I don't remember about it. Mr. McCall told me to sign. That man scared me to death. I went down there and I went to see Mrs. McLaurin first and it looked like he got insulted. I don't know what I done. I would not swear that is my signature. It kinder looks like it. I will not swear it is or is not. I don't remember what was in the paper. It was several years ago. I know I went to Mr. McCall's office and he scared me half to death. I went to see Mrs. McLaurin first, then I went to the office. I remember that much.

"I don't know whether that is my signature or not. I signed no paper giving away my home. I tell you at the time I was in there I was most

wild; that man scared me so bad. That looks like I signed it. I cannot read without my specks. That looks like my handwriting. I would not swear I did it. It looks like my handwriting. Mr. McCall just simply got offended because I went to see her first. I think I signed some paper-writing down there."

It is rare that a more complex situation is presented, and it is not only manifest that the title to land is in controversy, but also that equities may arise when the facts are definitely settled, which it was never intended should be committed to a justice of the peace for adjustment.

We have refrained from expressing an opinion upon the different questions in controversy because not necessary to this decision, and it is better and fairer to the parties to await a fuller development of the facts in a court having jurisdiction of the whole case.

The only matter before us is whether the questions arise, and if so, has a justice of the peace jurisdiction of them?

It is but just to counsel for plaintiff to say that when this proceeding was instituted it appeared to them that the relation between the plaintiff and defendant was that of landlord and tenant, pure and simple, and that the question of jurisdiction arises on account of the claims of the defendant under an unregistered paper.

Affirmed.

CLARK, C. J., dissenting: When this case was dismissed by the justice of the peace the appeal brought it into the Superior Court. If the justice erred, the case should have been tried in the Superior Court *de novo*. If he was correct in dismissing, the case was all the more in the Superior Court by virtue of the appeal, and as that court had jurisdiction of the subject-matter it should have proceeded to try the case on its merits. In this day when there is search for more efficiency in the administration of the courts, there is no reason to dismiss a cause which is in a court which has full jurisdiction of the subject-matter, simply that the plaintiff may issue another process and come back into the very same court. To do so is but to follow the ancient ideas by which if a cause was brought in *debt* when it should have been in *covenant,* or in *detinue* when it should have been in *replevin,* or in *equity* when it should have been at *law,* the plaintiff was dismissed and told to come back into the same court.

On a like appeal from a justice in a criminal action, if the justice did not have jurisdiction, the defendant is not dismissed, but a bill is sent to the grand jury. In the appeal in a civil case, jurisdiction should likewise be retained and a complaint filed.

It is sometimes said that on appeal from the justice the Superior Court acquires only *derivative* jurisdiction. There is nothing in the Constitution to that effect and no warrant for the position. The case if tried on appeal in the Superior Court is tried *de novo* and in every

particular as if the cause had been originally brought to that court. The warrant and trial before the justice and the appeal in this case have given the defendant certainly as much notice of the nature of the case as if a summons had been served on him returnable to the Superior Court.

The Superior Court is a court of general jurisdiction. Formerly when an action was brought before the clerk when it should have been brought to the court at term, the action was dismissed, upon exactly the same ground that it is now sought to oust the jurisdiction of the Superior Court. But the Legislature passed the statute which is now Revisal, 614, which provides: "Whenever any civil action or special proceeding begun before the clerk of the Superior Court shall be, for any ground whatever, sent to the Superior Court before the judge, the judge shall have jurisdiction," and authorizes him "to hear and determine all matters in controversy in such action." The decisions hold that the judge may make any amendment whatever in such case, and even though the proceeding before the clerk was a nullity. *In re Anderson,* 132 N. C., 243; *R. R. v. Stroud, ib.,* 416; *Ewbank v. Turner,* 134 N. C., 81. This was so, logically, under our system of courts, without the passage of the act to correct decisions theretofore to the contrary. The same rule, and for the same reason, should obtain on appeals from a justice of the peace in civil cases as fully as in criminal cases. The Superior Court having general jurisdiction, is seized fully of all cases brought on its docket by appeal, as fully as if they had originated there, and the judge should have power to make amendments and try the cases as if they had begun in that court.

This matter has been fully discussed in *Unitype Co. v. Ashcraft,* 155 N. C., at p. 71; *Cheese Co. v. Pipkin, ib.,* at p. 401; *S. v. McAden,* 162 N. C., at p. 578, and in *Sewing Machine Co. v. Bullock,* 163 N. C., at p. 547.