ELLA HARGROVE v. SARAH COX.

(Filed 17 November, 1920.)

**1. Landlord and Tenant—Title—Tenant's Possession—Deeds and Convey-ances—Guarantee of Landlord—Wills—Evidence—Appeal and Error.**

A tenant is estopped to deny the title of the one under whom he holds possession, without first having surrendered the possession; but this doctrine does not apply when the title of the landlord has terminated, or claimed by descent, or to prevent the tenant from assailing, for fraud, the validity of an alleged transfer from his landlord, in order to protect his possession; as where the niece of the testator, his tenant, in possession, claims title under his will, duly admitted to probate, and attacks for fraud the deed of her landlord under which the plaintiff claims; and the exclusion of the defendant's evidence to this effect is reversible error.

**2. Courts—Jurisdiction—Landlord and Tenant—Justices of the Peace—Superior Courts—Appeal.**

The courts of a justice of the peace have no jurisdiction when in a possessory action of ejection, the issue of the landlord's title is involved in the disposition of the case, and the jurisdiction of the Superior Court, being derivative, it cannot acquire such jurisdiction on appeal; and the action being without the jurisdiction of the former court, it should be dismissed in the latter one. Const., Art. IV, sec. 27.

**3. Courts—Justices' Courts—Jurisdiction—Landlord and Tenant—Title.**

Where the plaintiff, in a possessory action of ejection in a justice's court, makes out a *prima facie* case of jurisdiction, it is not ousted merely by reason of an answer setting forth a controversy as to the title to the land or other jurisdictional question; but the court will proceed to hear the testimony and determine whether, in fact, such controversy is presented in the action, and in this case it is held sufficient.

CLARK, C. J., concurring.

SUMMARY PROCEEDINGS in ejectment under the Landlord and Tenant Act, tried on appeal from a justice's court, before *Guion, J.*, and a jury, at May Term, 1920, of NEW HANOVER.

There was evidence for the plaintiff tending to show that defendant rented the house and lot in question, or a portion of it, from Edward Gause, former owner, some time in 1911, and had continued in occupation of the property until the death of Edward Gause in December, 1916; that five or six days before his death, said Edward Gause, uncle of plaintiff, conveyed the property to plaintiff, who instituted the present suit. Defendant, denying the right to maintain the proceedings, offered evidence tending to show that defendant had not rented the house from Edward Gause, who was her uncle also, but had lived in the house to take care of him for six years past; that twelve or eighteen months before his death said Edward Gause had duly made his last will and testament, devising this property to defendant, his son and his brother,

and two grandchildren, "share and share alike," which will had been duly proven and recorded. Defendant produced evidence further tending to show that the devisor and former owner, Edward Gause, who was between 80 and 90 years of age, had suffered a stroke of paralysis three months before his death, and after that time, and at the time of the making of the alleged deed the plaintiff, five or six days before his death, as stated, he had not sufficient mental capacity to execute a valid deed, or to know what he was doing. The court being of the opinion that "defendant" could not attack the deed of Edward Gause to the plaintiff, and could not set up title in herself submitted and restricted the force and effect of the pleadings to the single issue. "Whether defendant had rented the property from Edward Gause prior to his death." The jury having answered the issue, "Yes." There was judgment of ejectment against defendant, and thereupon she excepted and appealed, assigning errors.

*W. B. McKoy and S. M. Empie for plaintiff.*
*Wright & Stevens for defendant.*

HOKE, J. It is familiar learning that a tenant is estopped to deny the title of his landlord. As stated, however, in some of the authorities apposite, the estoppel in question "extends merely to a denial of what has already been admitted, that is, the original landlord's title and does not prevent a tenant from assailing the validity of an alleged transfer from the original landlord." The modification suggested is approved by this Court in *Steadman v. Jones,* 65 N. C., 388-391, and generally recognized as the correct position on the subject, *Jackson v. Rowland,* 6 Wendall (N. Y.), 666; *Million v. Riley,* 1 Dana (Ky.), 359; 24 Cyc., p. 745; 16 R. C. L., p. 670; title Landlord and Tenant act, 156. In any event, therefore, there was error to defendant's prejudice in refusing to consider the evidence offered by defendant tending to show that the plaintiff had not succeeded to the right which the defendant had recognized in taking the alleged house. And this cause being a summary proceeding in ejectment instituted before a justice of the peace, we are of opinion further, from the facts of the record as they now appear, that this action should be dismissed for lack of jurisdiction to proceed further with the hearing. Our Constitution, Art. IV, sec. 27, denies to justices of the peace jurisdiction of causes where the title to real estate is in controversy, and it is the accepted position, approved and illustrated in numerous decisions, that where a justice's court is without jurisdiction of a cause of action, the Superior Court, on appeal, cannot proceed with it, the jurisdiction of the latter being derivative only, and dependent on that of the justice of the peace where the cause originated. *McLaurin*

*v. McIntyre,* 167 N. C., 350; *McIver v. R. R.,* 163 N. C., 544; *Cheese Co. v. Pipkin,* 155 N. C., 394. In the last citation the principle is stated as follows: "The Superior Court has no jurisdiction on appeal from a justice's court of an action erroneously brought in the latter court, and of which the justice's court had no jurisdiction, the jurisdiction of the Superior Court being derivative only." Again, while our Court has been very insistent on the principle that where one has entered under a lease or contract of rental, he may not dispute or question the title of his landlord without first surrendering the possession. The position does not necessarily or usually prevail when the title of the landlord has terminated, and especially when the same has been acquired by or descended upon the tenant. As said in *Lawrence v. Eller,* the loyalty which affords the basis for the position is to the title under which the tenant has entered, and in the case suggested the loyalty in question not infrequently permits and may require that the tenant shall avail himself of the title acquired to protect his possession, and is allowed to assert and insist upon it for the purpose indicated. *Lawrence v. Eller,* 169 N. C., 211-213; *Forsythe v. Bullock,* 74 N. C., 135; *Turner v. Lowe,* 66 N. C., 413. In the *Lawrence case* the general principle, and some of the exceptions, are stated as follows: "It is recognized as the general rule that a tenant is not allowed to controvert the title of his landlord or set up rights adverse to such title without having first surrendered the possession acquired under and by virtue of the agreement between them.

"The position does not usually obtain where, after the renting, the title of the landlord has terminated, for, under the doctrine as it now prevails, the loyalty required is to the title, not to the person of the landlord, and in courts administering principles of equity the estoppel is not recognized when the tenant has been misled into a recognition of his lessor's title by mistake or fraud, and under circumstances which would induce a court of equity to hold the landlord a trustee for the tenant, and there are other exceptions of a restricted nature." And in *Turner v. Lowe, supra,* it was held as follows: "The principle that a tenant cannot dispute his landlord's title is in full force, but a tenant was never prevented from showing an equitable title in himself, any facts which would make it inequitable to use the legal estate to deprive him of the possession." For this purpose formerly a tenant was driven into equity, but under the present system the tenant in such cases can avail himself of such equitable defenses in his answer. And in determining the question of justice jurisdiction, the courts hold that where a *prima facie* case within such jurisdiction is stated and made the basis of plaintiff's claim, such jurisdiction is not ousted merely by reason of an answer setting forth a controversy as to the title of realty or other jurisdictional question, but the court should hear the testimony in the cause and deter-

mine from that whether such controversy is in fact and truth presented. From a perusal of the record and on issue joined, there are facts in evidence on the part of the defendant tending to show that the plaintiff is a niece of Edward Gause, the former owner and alleged landlord, and that the deed from him, under which plaintiff claims the property, was executed five or six days before his death,. when he was approaching 90 years of age; that he had suffered an attack of paralysis three or four months before, was utterly helpless and without mental capacity to make the deed or any other similar paper. There was evidence further to the effect that more than a year before this the owner had executed a will in proper form, which had been admitted to probate, according to which he devises the property to defendant and the sons and grandsons of the devisor. And under a proper application of the authorities cited, and the principles they approve and illustrate, we are of opinion that it is open to defendant to raise the issue as to the validity of plaintiff's claim and under the testimony referred to there is a controversy involving the title to real property presented which withdraws the case from a justice's jurisdiction and deprives the Superior Court of the right to proceed further in the matter. *McLaurin v. McIntyre, supra; Hahn v. Guilford*, 87 N. C., 172; *Parker v. Allen*, 84 N. C., 466; *Forsythe v. Bullock*, 74 N. C., 135; *Turner v. Lowe*, 66 N. C., 414. In the *Mc-Laurin case* it was held: "The jurisdiction conferred by the landlord and tenant act upon justices of the peace does not obtain where the title to the land is in dispute; and when, in the course of the trial, it appears that the matters involved do not fall within the jurisdiction conferred in these respects, the justice should dismiss the action; and, upon appeal, the Superior Court, acquiring no further jurisdiction than the court wherein the action was commenced, may not proceed with the trial." In the *Parker case* the ruling of the Court is stated as follows: "In a summary proceeding in ejectment before a justice of the peace, or on appeal, it is the province of the court to determine whether the title to the land is in controversy, and where the testimony shows that such controversy exists or that equities growing out of a contract of purchase are to be adjusted, as in this case, the proceedings should be dismissed for want of jurisdiction."

This will be certified to the end that the proceedings be dismissed, plaintiff being free to seek relief by action in Superior Court, if she is so advised.

Reversed.

CLARK, C. J., concurs that the principle which estops a tenant to deny the title of his landlord does not prevent the tenant from assailing the validity of an alleged transfer from the original landlord. *Steadman v.*

*Jones,* 65 N. C., 388; 24 Cyc., 745; 16 R. C. L., 670. And, therefore, there is error entitling the defendant to a new trial for refusing to consider the evidence offered by him tending to show that the plaintiff had not succeeded to the rights of the landlord from whom the defendant had rented the house. But does not concur in the proposition that this action, which came up by appeal from a magistrate, ought to have been dismissed in the Superior Court, and the parties invited to come back into the very court from which they had been dismissed.

This would be in accord with the technical ideas formerly prevailing in the administration of the courts. But under our present system, the case having reached the Superior Court, that court should have proceeded to try the case on its merits, without requiring the parties to go out of court, with an invitation to come back again into the same court. An examination of the Constitution will show no basis for the doctrine of "derivative jurisdiction." The Superior Court having acquired jurisdiction by the appeal, retains it for all purposes, and should proceed to decide the cause upon its merits. This has been often before decided by this Court, though there are some cases to the contrary.

As far back as *West v. Kittrell,* 8 N. C., 493, it was held that where a cause was carried to the Superior Court from a lower court, the Superior Court will retain jurisdiction if it were a subject-matter of which it would have had jurisdiction. In *Boring v. R. R.,* 87 N. C., 363, it was held that where the subject-matter of the action was one of which the justice of the peace and the Superior Court had concurrent jurisdiction, on appeal the latter will retain jurisdiction, though the proceeding in a court of a justice of the peace was void for irregularity. The ground given is that the case having gotten into the Superior Court, which had jurisdiction, the notice of appeal had the same efficacy as if the defendant had been brought in by service of summons.

In *McMillan v. Reeves,* 102 N. C., 559, *Smith, C. J.,* applied to appeals in civil actions the same rule as in criminal proceedings, and says: "It is not material to inquire into the question of jurisdiction in initiating the suit, since any objection on this account is obviated by the removal of the cause into the Superior Court"; saying further, "The court assumed to exercise jurisdiction; did possess it fully over the subject-matter of the action and the parties, and the cause was, in a strict sense, *coram judice* under the rulings in *West v. Kittrell,* 8 N. C., 493, and *Boring v. R. R.,* 87 N. C., 360, even without the Laws of 1887, ch. 276, now Rev., 614 (C. S., 637), which sustains the jurisdiction thus acquired." The *Chief Justice* further said: "The objection to the jurisdiction has no force unless the proceeding in its entirety is a nullity, and it certainly cannot require argument to combat such contention.

*Peoples v. Norwood,* 94 N. C., 167." In this last case the Court held that where the parties were before the court, it was sufficient though no summons was served.

In *S. v. Neal,* 120 N. C., 618, it is said: "The case was tried before a justice of the peace, and the defendant appealed. In the Superior Court an indictment was found by the grand jury, and the defendant was tried thereon; therefore, in any aspect, there was jurisdiction. Whether the court acquired it by the appeal, or had original jurisdiction by the indictment, it is immaterial to decide."

When the clerk wrongfully takes jurisdiction, and the cause, by appeal or otherwise, reaches the Superior Court, the court has jurisdiction, and the act of 1887, now C. S., 637, provides that the judge shall "hear and determine all matters in controversy in such action," and shall make any amendments whatever, and this was held to be so though the proceeding before the clerk was a nullity. *In re Anderson,* 132 N. C., 243; *R. R. v. Stroud, ib.,* 416; *Ewbank v. Turner,* 134 N. C., 81.

The above cases are cited in the concurring opinion in *S. v. McAden,* 162 N. C., 577, it being added: "The sole object in serving a summons is to give the defendant notice to come into court. When he has had a trial on a *bona fide* mistake of jurisdiction by the plaintiff, before a justice of the peace, on appeal in the Superior Court, he has really had the most sufficient notice, and is better prepared to try than if he had been served with summons to appear in the Superior Court." There can be no benefit to either party by dismissing the action and requiring the defendant to come back into the same court by service of summons.

In the concurring opinion in *Holmes v. Bullock,* 178 N. C., 380, it is said that there is "no basis for the doctrine of derivative jurisdiction, which is simply a survival of the former idea obtaining by which so many objections were had to jurisdiction." For instance, if an action was brought in the wrong county it was dismissed because the plaintiff had guessed wrong as to venue, and he had to begin over again with loss of time and considerable expense. So, also, when one brought an action for debt when it should have been in covenant or in detinue and it should have been in replevin, or if he guessed erroneously by using another form of action than that which the court might deem the correct one, he was dismissed with costs, and with loss of time to sue again in the same court, and if he guessed wrong again, he was again dismissed until he guessed right; or if he brought a suit in equity when it should have been an action at law, or *vice versa,* he went through the same heart-breaking experience to come back into court before the same judge. Now the court simply permits amendment and proceeds to try the cause.

There are decisions contrary to the above holding that in appeals in civil cases from a justice a different rule applies from that on appeal

from a justice in criminal cases, or on appeal from the clerk. Though in both these cases the trial court was without jurisdiction, the Superior Court proceeds to try them without question. It may be that the Legislature will amend C. S., 637, to apply also to appeals in civil cases from a justice of the peace, for the decisions of the court are irreconcilable.