J. B. WINDERS ET AL. v. J. G. KENAN ET ALS.

(Filed 19 March, 1913.)

1. **Contracts, Unilateral — Deeds and Conveyances — Options—Acceptance.**

Where in consideration of a certain sum of money the owner of lands agrees to convey them within a named period upon the payment of an agreed purchase price, the writing is unilateral, an offer to give another the right to buy, an option, and not a contract to sell, which does not bind the one accepting its conditions to purchase the land, and he is required to exercise his rights thereunder within the specified time, and perform the condition imposed as to payment, in accordance with the terms of the writing.

2. **Same—Consideration—Rights of Parties.**

Where a unilateral contract or option for the sale of lands is not based on a valuable consideration, the right to buy may be withdrawn at any time before acceptance; but if there is a valuable consideration to support it, the right continues during the period fixed in the option.

3. **Same—Conditions Precedent—Tender.**

Where an option for the sale of lands has been accepted, which provides for the payment of the purchase price as a condition precedent, it is the duty of the purchaser to pay in accordance with its terms, and a mere notice of his intention to buy is insufficient.

#### 4. Same—Time of the Essence.

Unilateral contracts or options for the sale of lands are to be construed more strictly in favor of the maker, and the time of its performance by the one holding the option is of the essence of the contract, and the conditions imposed must be performed by him in order to convert the right to buy into a contract of sale.

#### 5. Contracts, Unilateral—Consideration—Purchase Price—Interpretation of Contracts—Conditions Precedent.

A written contract for the conveyance of land which expresses the consideration of $500 paid to the maker, and that upon the payment of a certain sum he will make the deed thereto, is construed to mean that the $500 was paid for the right to buy, and that this right cannot be exercised until payment or tender of the purchase money is made.

#### 6. Same—Waiver—Acceptance—Tender.

Where as a condition precedent to the delivery of the deed an option on land provides for the payment of the purchase money by a certain time, and this payment is delayed by reason of the maker not being prepared with his deed, and thereafter the proposed purchaser is notified of the maker's readiness, the previous waiver of the time of payment by the maker does not excuse the purchaser from making a prompt tender of the purchase money, in accordance with the terms of the option; and his mere notice that he will exercise the right is ineffectual to secure it.

#### 7. Contracts, Unilateral — Conditions Precedent — Tender—Failure of Performance—Deeds and Conveyances—Alterations.

Where the payment of the purchase price is made a condition precedent to the right to exercise an option for the purchase of lands, and the proposed purchaser has failed to tender the purchase price in accordance with his contract, any alterations in the deed by the maker thereafter becomes immaterial, the purchaser having lost the right to demand the deed his option had called for.

APPEAL from *Carter, J.,* at August Term, 1912, of DUPLIN. This is an action to compel specific performance, based upon the following instrument:

This agreement, executed this 17 January, 1905, by and between James G. Kenan and heirs of O. R. Kenan, of the county of Duplin and State of North Carolina, of the first part, and

J. B. Winders and L. F. Hall of the second part: Witnesseth, That said party of the first part, for and in consideration of the sum of $500 to him in hand paid by the said party of the second part, the receipt whereof is hereby fully acknowledged, doth agree that upon the payment of $10,000, $2,000 of which is to be paid 1 April, 1905, and the remainder in four annual payments, with interest at 6 per cent, to give, grant, sell, and convey by proper deed with full warranty, and assure to the said party of the second part, his heirs and assigns, all the trees on the following described tract of land, situated in the said county and State, adjoining the land of David Brooks, James Carr, and others, bounded as follows, to wit: North David and James D. Brown, east by Billie Brock and S. W. Cavenaugh, south Northeast River, west James Cavenaugh and Murphy's heirs.

Exceptions—For Plantation Purposes:

Cypress in Murphey's slew and privileges to clear any of said land, also the right of way for the party of the second part, his agents and servants, his heirs and assigns, and their agents and servants to go upon the said lands, and all other land of the party of the first part, for the term of ten years, with an extension of ten years by paying interest and amount of purchase annually during time of extension, to remove the said timber, and the permanent and exclusive right to build railroads and tramroads and to erect all necessary buildings and machinery thereon and to remove the same. In witness whereof the said party of the first part hath hereunto set their hands and seal the day and year first written above.

JAMES G. KENAN          [SEAL].

THOMAS S. KENAN          [SEAL].

MARY H. KENAN          [SEAL].

MRS. JAMES G. KENAN [SEAL].

SALLIE D. KENAN          [SEAL].

ANNIE D. KENAN          [SEAL].

The probate of this instrument was not complete until 25 April, 1905, and it was registered on 1 May, 1905.

About 1 April, 1905, one of the plaintiffs and James G. Kenan, who represented the other makers of the instrument,

met in Kenansville for the purpose of having a deed prepared, and a deed was prepared in accordance with said writing, and at that time the said plaintiff told the said Kenan that he would be ready to make the first payment when the deed was delivered.

The probate of the deed was complete about 10 April, 1905, and the plaintiffs were notified thereof during the month of April, and not later than 27 April.

The plaintiff offered evidence tending to prove that between 6 March and 10 March, 1905, they told the said Kenan that they would take the timber, and for him to prepare a deed, and that the money was ready, and that the said Kenan said that he would have to have a little time, as the parties did not live close together, and that a few days would not make any difference as to the execution of the deed or as to the payment of the money; that on 30 May, 1905, the plaintiff tendered to the defendant the sum of $1,500, which the defendants refused to accept, and declared the contract at an end; that in the fall of 1905 or the spring of 1906, the plaintiffs tendered to the defendants two checks, one in the sum of $2,500 and the other in the sum of $9,220, which were refused; that on 28 February, 1908, the plaintiffs tendered to the defendants $2,240, which was refused; then in March, 1909, the plaintiff tendered to the defendants the sum of $2,120, which was refused; that during the last of March or the first of April, 1909, the plaintiffs tendered to the defendants $9,500, and four years interest thereon, which was refused.

There was no other evidence upon the part of the plaintiff of the tender of any part of the purchase money, but they did offer evidence that they were at all times ready, able, and willing to pay the purchase price, but they contended that the $500 first recited in said instrument was a part of the purchase price, and that the balance was $9,500, instead of $10,-000.

They also offered evidence tending to prove that after the deed was written on 1 April, 1905, material changes were made therein, so that it did not conform to said instrument, and that

they declined to accept it, on that ground. At the conclusion of the whole evidence, his Honor entered judgment of nonsuit, and the plaintiffs excepted and appealed.

*G. E. Butler, Kerr & Gavin, and Faison & Wright* for plaintiffs.

*Stevens, Beasley & Weeks, H. D. Williams, and W. P. Stacy* for defendants.

ALLEN, J. In bilateral contracts there are reciprocal promises, so that there is something to be done or forborne on both sides, while in a unilateral contract there is a promise on one side only, the consideration on the other side being executed. 9 Cyc., 244. An option belongs to the latter class. It is a contract to give another the right to buy, and not a contract to sell; and it is because of the fact that the other party is not compelled to buy, that it is spoken of as an offer.

In *Black v. Maddox,* 104 Ga., 157, approved in *Trogden v. Williams,* 144 N. C., 199, it is defined to be "the obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time."

If not based on a valuable consideration, the right to buy may be withdrawn at any time before acceptance (*Paddock v. Davenport,* 107 N. C., 710); but if there is a valuable consideration to support it, the right continues during the period fixed in the option. *Cummins v. Beaver,* 103 Va., 230. In this case the Court said: "The distinction between an option given without a consideration and an option given for a valuable consideration is, that in the first case it is simply an offer to sell, and can be withdrawn at any time before acceptance, upon notice to the vendee; but, in the second, where a consideration is paid for the option, it cannot be withdrawn by the vendor before the expiration of the time specified in the option."

If no conditions are imposed upon the prospective purchaser, and it is a simple proposition giving the right to buy,

upon notice of acceptance it becomes a contract of sale and is obligatory on both parties, and it is then the duty of the seller to tender his deed and of the purchaser to pay according to its terms. *Hardy v. Ward,* 150 N. C., 393.

The maker has, however, the right to impose conditions which must be performed precedent to the exercise of the right to buy, and among these is the payment of the agreed price. *Weaver v. Burr,* 31 W. Va.; 201; *Pollock v. Brookover,* 6 L. R. A. (N. S.), 407; *Trogden v. Williams,* 144 N. C., 201.

In the *Trogden case* the language in the contract was: "If they shall, within the time hereinafter specified, elect to purchase said land, then and in that event they shall pay one-half cash and the balance in twelve months, to be secured by mortgage"; and the Court held that "payment of one-half the purchase money and securing the other half constitute the method of electing to purchase," and quoted with approval the following excerpt from *Weaver v. Burr, supra:* "The period of sixty days from 7 June, 1883, mentioned in the option, within which plaintiff had the privilege of buying the land . . . expired on 6 August, 1883. During the whole of that period and during the whole of 6 August plaintiffs had the privilege of converting the offer of John Burr into a valid and binding contract by an unconditional acceptance of and compliance with the terms thereof. They could not do so in any other manner than by actual payment or tender of the whole price of the land before the sixty days expired. Neither could they withhold the payment, or tender of payment, until a proper deed was executed or survey could be made and the excess number of acres ascertained." Contracts of this character, being unilateral in their inception, are construed strictly in favor of the maker, because the other party is not bound to performance, and is under no obligation to buy, and it is generally held that time is of the assence of such a contract, and that the conditions imposed must be performed in order to convert the right to buy into a contract of sale.

The acceptance must be according to the terms of the contract, and if these require the payment of the purchase money or any part thereof, precedent to the exercise of the right to

buy, the money must be paid or tendered, and a mere notice of an intention to buy or that the party will take the property does not change the relations of the parties. *Bateman v. Lumber Co.,* 154 N. C., 251; *Clark v. Lumber Co.,* 158 N. C., 139; *Kelsey v. Crowther,* 162 U. S., 404; Pom. Spec. Per., sec. 387; *Weaver v. Burr, supra; Trogden v. Williams, supra; Pollock v. Brookover,* 6 L. R. A. (N. S.), 407; *Killough v. Lee,* 2 Tex. Civ. App., 260; *Stembridge v. Stembridge,* 87 Ky., 94; *Shields v. Horback,* 30 Neb., 540; *Holleman v. Conlon,* 143 Mo., 379.

In the *Bateman case, Justice Hoke,* in discussing a provision in a contract in regard to land, says: "The provision in question, conferring, as it does, a privilege, and unilateral in its obligation, partakes to some extent of the nature of an option, in which time is ordinarily of the essence, and the accepted doctrine in reference to this and other instruments containing the same and similar language is that they should be strictly construed. There is, moreover, a strong inclination on the part of the courts to view any delay with great strictness, on the ground that the party seeking to enforce performance was not bound, while the other party was bound," and quotes with approval from *Estes v. Furlong,* 59 Ill., 298, that "when a contract is in any wise unilateral, the court will regard any delay on the part of the purchaser with especial strictness."

In the *Kelsey case* the Court said: "The action was in the nature of a bill for specific performance of a contract for the sale and purchase of a tract of land. If the contract is construed as making it the duty of Crowther to tender the abstract, yet his failure to do so did not dispense with performance or the offer to perform on the part of the complainants. His failure to furnish the abstract might have justified the complainants in declaring themselves off from the contract, and might have formed a successful defense to an action for damages brought by Crowther. But if they wished to specifically enforce the contract, it was necessary for the complainants themselves to tender performance. To entitle themselves to a decree for specific performance of a contract to sell land, it has always been held necessary that the purchasers should tender the purchase money. This is the rule in the ordinary case

of a mutual contract for the sale and purchase of land. And the rule is still more stringently applied in the case of an optional sale, like the present one, where time is of the essence of the contract, and where Crowther could not have enforced specific performance. In such a case, if the vendee wishes to compel the other to fulfill the contract, he must make his part of the agreement precedent, and cannot proceed against the other without actual performance of the agreement on his part or a tender and refusal."

In the case from Texas the appellant paid $50 for an option to buy within six days thereafter a lot in Galveston for $12,000 cash, upon payment of which appellee was to make deed: Within the six days he notified the agent of appellee that he would take it, and offered to deposit such amount as might be required of him to bind the purchase pending examination of title, which was declined, and payment of the whole $12,000 required, and it was held that payment of the purchase price was necessary to constitute a valid acceptance.

And in the case from Missouri the Court declares the same principle, saying: "The distinction is justly taken by the authorities between a perfected contract, that is, where both parties are bound, and therefore, ordinarily speaking, time is not regarded as of the essence of the contract, and an option contract, where only the intended vendor is bound and the intended vendee not bound, where the relation of vendor and purchaser does not exist and does not become existent until acceptance by the proposed vendee by the performance of the specified condition and within the time specified. In such cases a court of equity will hold that in consequence of the one party being bound and yet unable to enforce the unilateral contract against the other, who is free, that the parties do not stand on an equal footing, and that, in consideration of these things, time must be deemed of the essence of the contract, and that when the time given by the memorandum expires without performance on the part of the option holder, the right of such holder is *ipso facto* gone."

It is needless to quote further from the authorities cited. They fully sustain the principle announced, except, perhaps,

the *Clark case,* which is only pertinent upon the proposition that an acceptance must be upon the terms imposed by the offer.

Applying these principles to the facts, we are of opinion that the plaintiffs are not entitled to specific performance.

The paper-writing does not purport to be a contract to convey, is unilateral, and is what is designated as an option.

In *Alston v. Connell,* 140 N. C., 488, the paper construed by the Court was as follows: This is to certify that I, Thomas Connell, did on this the 5th day of December, 1898, purchase the 600-acre tract, known as the 'Tusculum farm,' and doth thereby bind himself, heirs and assigns, at any time previous to 1 December, 1898, to sell the same to whom P. G. Alston may direct for $3,502. Witness, etc. Thomas Connell (Seal). Two hundred and fifty dollars of which is for improvements for 1899, which if not used, or any part thereof, is to be returned to the said P. G. Alston. (Signed) Thomas Connell."

This paper had many more of the characteristics of a contract to sell than the one relied on by the plaintiff, because the maker binds himself to sell before a certain time; but the Court said: "We agree with the defendants, that this was a unilateral contract, commonly called 'an option'—a proposition to sell, binding and irrevocable by the owner till the stipulated time expires, but in which time was of the essence under ordinary circumstances, and, in cases like the present, requiring payment of the price as a condition precedent."

In the writing before us the makers, in consideration of $500 paid, agree upon the payment of $10,000, of which $2,000 was to be paid 1 April, 1905, and the remainder in four annual installments at 6 per cent interest, to give, grant, sell, and convey by proper deed, etc., which if we adopt a liberal and not a strict construction, can mean no more than that the $500 was paid for the right to buy, and that this right could not be exercised, nor were the makers under any obligation to convey, until payment or tender of the purchase money.

If this is the correct interpretation of the writing, the notice given by the plaintiffs in March, 1905, that they would take the timber, did not change the relations of the parties and con-

vert the writing into a contract to sell, because the writing imposed the further condition of payment of the purchase money.

Nor can the conversation at the time the deed was written have this effect, as no money was presented or tendered, and it amounted to no more than an expression of readiness to make the first payment of $2,000 upon delivery of the deed.

It may be conceded, as contended by the plaintiffs, for the purposes of this appeal, and not otherwise, that the conversation with one of the defendants in March, the delay in the execution of the writing sued on and in the execution of the deed, work a waiver of the right to demand payment on 1 April, 1905; but it appears from the record that the paper-writing was complete on 25 April, 1905, and was registered on 1 May, thereafter, and the plaintiffs were notified on 27 April, 1905, that the deed was ready for delivery.

After notice of the execution of the writing and of the deed, there was no excuse for further delay, and it was then incumbent on the plaintiffs to pay or tender the sum of $2,000 at least, promptly.

They did not do this, but, on the contrary, waited until 30 May, 1905, before they offered to pay any amount, and then only the sum of $1,500, which was not in compliance with the writing upon which they sue, in time or amount.

The defendants refused to accept, and declared the contract at an end, as they had the right to do, and it could not be revived without their consent by subsequent offers to pay.

In the view of the case we have adopted, the altercation of the deed after it was written is not material, as the correspondence shows that while the defendants wished some modification of the option, they did not refuse to execute a deed in accordance with its terms until the plaintiffs had by delay lost their right to demand it.

If under the writing the plaintiffs had been required to do no more than give notice of acceptance, they would have had the right to delay payment until a deed was tendered conforming to the writing, but they were required to pay before they were entitled to demand a deed of any kind, and had not placed themselves in position to criticise the one offered.

We have discussed the case in the light most favorable to the plaintiffs, upon the assumption that they could have demanded a deed upon the payment of $2,000, but we do not so decide, as the writing says upon the payment of $10,000, of which $2,000 was to be paid on 1 April, 1905, and the remainder in four annual installments, the makers agree to sell and convey.

For the reasons given, we are of opinion there was no error in entering the judgment of nonsuit.

Affirmed.