### W. G. JEROME v. JAMES SETZER AND WIFE, VIOLA SETZER.

(Filed 17 April, 1918.)

1. **Ejectment — Landlord and Tenant — Justice of the Peace—Jurisdiction—Proof.**

    While a justice of the peace has no jurisdiction in ejectment, though the technical relation of landlord and tenant exists, if it appears that the defendant, tenant in possession, has acquired or holds an interest in the property itself, either under an executory contract of sale or otherwise under circumstances giving him a right to call for an accounting and an adjustment of the equities between the parties upon which the title may depend, the bare averment of the pleadings that such conditions exist is not sufficient to deprive the justice's court of its jurisdiction, but such must be made to appear from the evidence or admissions of the parties.

2. **Landlord and Tenant—Lease—Option—Acceptance—Contract.**

    A contract for the lease of lands giving the lessee the privilege to buy within a certain specified time upon a partial payment on the purchase

price of so much cash and the balance according to stated terms is a lease with an option to purchase, which option must be exercised within the time stated and in accordance with its terms, and creates no interest in the property itself unless and until such is accepted accordingly or sufficiently waived by the optionee.

3. **Justices of the Peace—Jurisdiction—Ejectment—Landlord and Tenant—Equity—Option—Acceptance.**

Where it appears in an action of ejectment that the plaintiff had leased lands to the defendant, and under a writing containing an option to purchase on certain terms within a stated time, and the option, if exercised at all, had been done so thereafter, about a week in this case, the defendant has no such interest or equity in the lands as will deprive the justice's court of its jurisdiction.

CLARK, C. J., concurring.

SUMMARY PROCEEDINGS in ejectment under the Landlord and Tenant Act, heard on appeal from a justice's court before *Shaw, J.,* and a jury at January Term, 1918, of FORSYTH.

At the close of plaintiff's evidence, on motion, the action was dismissed, his Honor being of opinion that on plaintiff's own showing the title to real estate was involved and the justice's court was without jurisdiction to hear and decide the cause.

Plaintiff having duly excepted, appealed.

*Manly, Hendren & Womble and D. H. Blair for plaintiff.*
*L. M. Swink and F. S. Hutchins for defendant.*

HOKE, J. It is settled by repeated adjudications in this State that though the relationship between the parties be technically that of landlord and tenant, the proceedings of summary ejectment instituted before a justice of the peace will not lie if it also appears that the defendant tenant in possession has acquired and holds an interest in the property itself, either under an executory contract of sale or otherwise and under circumstances giving him a right to call for an accounting and an adjustment of equities between the parties upon which the title may depend. *McLaurin v. McIntire,* 167 N. C., 350; *Hauser v. Morrison,* 146 N. C., 248; *Parker v. Allen,* 84 N. C., 466.

The principle is very well stated in the first headnote to *Hauser v. Morrison, supra,* as follows: "Summary proceedings in ejectment given by the Landlord and Tenant Act (Revisal, sec. 2001) are restricted to the cases expressly specified therein; and when on the trial it is made to appear that the relation existing is that of mortgagor and mortgagee giving a right to account, or vendor and vendee requiring an adjustment of equities, a justice's court has no jurisdiction, and the proceedings should be dismissed."

It is also held in numerous cases that the principle does not arise for the protection of a defendant from the bare averment in the pleadings that the conditions exist, but they must be made to appear from the evidence or admission of the parties. *Pasterfield v. Sawyer,* 132 N. C., 258; *McDonald v. Ingram,* 124 N. C., 272; *Hahn v. Guilford & Latham,* 87 N. C., 172. And further, that the findings of the lower court on this question will be upheld if there is legal evidence to support it. *Parker v. Allen, supra.*

Considering the record in view of these principles, it appears in the present case that in 1916 defendants James Setzer and his wife, Viola, held a house and lot in Forsyth County containing one-sixteenth of an acre, subject to a mortgage to the Winston Building and Loan Association; that defendants having failed to make the payments to said company, the mortgage was duly foreclosed by sale, pursuant to its terms, and plaintiff, at the instance of W. T. Wilson, Esq., an attorney who was acting for defendants in the matter, bought in the property and took a deed for same at $1,120, and with a view to helping defendants to a purchase of the lot, on 9th August, entered into a written contract of lease to be in force till 9th December following, at the rate of $3 per week, payable on Saturday of each week. In said instrument plaintiff further stipulated that, at the request of said James Setzer and wife, on or before said 9th December, he would sell and convey said property to them for $1,200 on terms of $50 in cash and the remainder of $1,150 to be evidenced and secured by note and mortgage on the property, etc.

The contract contained further stipulations as follows: "It is further understood and agreed that the said sale is to be made at the option of the said James Setzer and wife, Viola Setzer, their heirs and assigns, to be exercised on or before the said 9th December, 1916. And it is further understood and agreed that if the said James Setzer and wife, Viola Setzer, their heirs and assigns, shall not demand of me (the said W. G. Jerome) the deed herein provided for on or before the said 9th December, 1916, then this agreement is to be null and void, and party of the first part shall be at liberty to dispose of the said land to any other person, or to use same as he may desire in the same manner as if this contract had not been made; but otherwise this contract is to remain in full force and effect. . . ."

And further: "In consideration of the execution of this lease and option of purchase, parties of the second part hereby release and relinquish any and all rights which they have heretofore in this land by reason of their prior purchase of same, save those rights herein set out, and all claims to said land which they might at present have, save as herein set out, and all controversy as to the title to said land, as far as they are concerned or interested, save as herein set out."

JEROME *v.* SETZER.

It appeared further from the oral evidence that defendant was in the habit of paying the rent that he paid to this attorney, Mr. W. T. Wilson, who would in turn pay the same to plaintiff; that this continued, the defendant paying at least three months of the rent and on Saturday, 9 December, the defendant paid W. T. Wilson the sum of five dollars, three of which was to be applied to the rent and two dollars on the bargain, and that some time the following week, after the 9th, defendants paid said W. T. Wilson forty-odd dollars on the price and between the 9th and the trial had paid said Wilson as much as fifty dollars in all. This attorney testified that he had no arrangement with Jerome, plaintiff, that he would collect this money for him, and no authority from him to receive it for him, but had with Mr. Setzer, that the latter was to bring the money to witness and he would turn it over. True, the witness testifies in the first part of his statement that he represented both parties in trying to get the matter settled, but this was evidently restricted to getting the parties together and inducing Jerome to buy, but, in reference to collecting the rent, etc., he states very clearly that he was acting for Setzer throughout, and further, that he did not notify Jerome on 9 December or before that, that Setzer and wife had elected to buy the property or that they had made any payment thereon, but, at some time in the following week, he "got Jerome into his office and tendered him the fifty dollars or told him he had it for him, and Jerome replied that he would not then receive the fifty dollars, but desired possession of the property.

On the material question in dispute Jerome, plaintiff, testified as follows: "James Setzer had paid, I think, three months rent altogether. He was behind on the 9th of December a little more than a month's rent, or a month's rent, and on the 19th day of December he was behind a month, and from the 9th to the 19th. James Setzer nor any one in his behalf prior to the 9th day of December did not tender me $50 or any other amount to be applied on this contract prior or after that date, neither he nor any one else. I was in Mr. Wilson's office a few days after the 9th day of December, and he said he had $40, if I would accept he would turn it over, but he didn't tender me $50 on it. This was about a week after the 9th of December, about the 15th, I think. I don't remember the exact date, but I know it was several days after the 9th."

On careful perusal of the instrument in question and of the testimony relevant to its correct interpretation, we are of opinion that, so far as any agreement to convey is concerned, the contract was only an option to buy, in which time is generally of the essence and which created no interest in the property itself unless and until there was acceptance according to its terms within the specified time or a recognition of such

estate and interest by the conduct of the parties and in waiver of the stipulations.

On this subject, the principle apposite is stated correctly, we think, in the recent case of *Carolina Timber Co. v. Wells*, 171 N. C., 262-264, as follows: "The cases on this subject are to the effect, further, that a stipulation of the kind now presented, providing for an extension of the time within which the timber must be cut, is in the nature of an option, and it is held by the great weight of authority that contracts of this character do not of themselves create any interest in the property, but only amount to an offer to create or convey such an interest when the conditions are performed and working a forfeiture when not strictly complied with. *Waterman v. Banks*, 144 U. S., 394; *Hacher v. Weston*, 197 Mass., 143; *Gaston v. School District*, 94 Mich., 502; *Newton v. Newton*, 11 R. I., 390; *Bostwick v. Hess*, 80 Ill., 138. Our own decisions are in general approval of these principles," citing *Ward v. Albertson*, 165 N. C., 218; *Winders v. Kenan*, 161 N. C., 628; *Bateman v. Lumber Co.*, 154 N. C., 248; *Hornthal v. Howcott*, 154 N. C., 228.

And in *Winders v. Kenan*, supra, it is held, among other things: "When in consideration of a certain sum of money the owner of lands agrees to convey them within a named period upon the payment of an agreed purchase price, the writing is unilateral, an offer to give another the right to buy, an option, and not a contract to sell, which does not bind the one accepting its conditions to purchase the lands, and he is required to exercise his rights thereunder within the specified time, and perform the conditions imposed as to payment, in accordance with the terms of the writing.

"Where an option for a sale of lands has been accepted, which provides for the payment of the purchase price as a condition precedent, it is the duty of the purchaser to pay in accordance with its terms, and a mere notice of his intention to buy is insufficient.

"Unilateral contracts or options for the sale of lands are to be construed more strictly in favor of the maker, and the time of its performance by the one holding the option is of the essence of the contract, and the conditions imposed must be performed by him in order to convert the right to buy into a contract of sale."

And applying these principles to the facts of the present record, we are of opinion, further, that since the foreclosure the defendants have never acquired or held any interest in the property itself, but only held an option to purchase, which they lost by an entire failure to comply within the time and that the ordinary incidents of a contract between landlord and tenant, on which the latter is estopped to question the former's title, should prevail, and the justice had jurisdiction to hear and decide the cause.

In the authorities cited by defendants, the tenant, in addition to his rights as lessee, had acquired and held an interest in the property itself, giving him the right to an account and adjustment of equities between them, either by the terms of the agreement or by recognition of the landlord in waiver of his rights, the case presented in *Hauser v. Morrison, supra.* But in the present instance, as stated, no such interest has been made to appear in any aspect of the evidence, and the relationship between the parties is one of ordinary lease between landlord and tenant, and where the time of the lessee has expired by the terms of the agreement. See *Burwell v. Cooper's Coöp. Co.,* 172 N. C., 79. With every disposition to sympathize with the efforts of the defendants to procure a home of their own, we think we are justified in saying, and the facts of the record disclose, that the defendants seem to have entered on an undertaking that has proved too much for them. They failed to make their payments to the building and loan companies, which we know are indulgent as far as permissible, and properly so. They have failed to comply with the option given by the plaintiff, who was endeavoring to help them. Where they procured the $50 which they claim to have tendered, but after the time specified, does not appear, but there is no likelihood that further indulgence would be of real benefit to them, and, in any event, we are of opinion, and so hold, that plaintiff is entitled to have his contract enforced in its integrity and on the testimony, if believed, there should be a verdict for plaintiff.

Reversed.

CLARK, C. J., concurs in the decision, but is further of the opinion:

1. That even if an equity had developed in the justice's court it would not have ousted the jurisdiction. The Constitution, Art. 4, sec. 1, is as follows: *"Abolishes distinction between actions at law and suits in equity feigned issues.* The distinctions between actions at law and suits in equity and the forms of all such actions and suits shall be abolished."

Same article, sec. 27, prescribes: *"Jurisdiction of justices of the peace.* The several justices of the peace shall have jurisdiction, under such regulations as the General Assembly shall prescribe, of civil actions founded on contract, wherein the sum demanded shall not exceed two hundred dollars and wherein the title to real estate shall not be in controversy, and of all criminal matters arising in their counties where the punishment cannot exceed a fine of fifty dollars or imprisonment for thirty days. And the General Assembly may give to justices of the peace jurisdiction of other civil actions wherein the value of the property in controversy does not exceed fifty dollars," with a further provision that in all actions, civil or criminal, "the party against whom judgment is rendered may appeal to the Superior Court."

JEROME v. SETZER.

It is clear, therefore, that the distinction formerly existing between law and equity (which was purely incidental, arising from equitable doctrines being brought into the law by progressive judges like *Lord Nottingham* and others against the protest of the more conservative occupants of the bench who deemed this distinction an indispensable law of nature) was absolutely destroyed as a matter of jurisdiction by the above provision in our Constitution. This distinction could thereafter obtain as little in the court of justices of the peace as in any other court. There is no intimation whatever that the jurisdiction of a justice of the peace is restricted to matters formerly cognizable on the law side or is ousted whenever an equitable element arises in the controversy. After the adoption of the Constitution of 1868, the bench being still occupied, necessarily, by judges who had been thoroughly indoctrinated with the idea that the distinction between law and equity was something inherent in the Constitution of the Universe, there were decisions which still upheld this distinction in actions brought before the clerk and before a justice of the peace, notwithstanding the explicit and unmistakable declaration of the Constitution. But we who can read the Constitution with clearer eyes, because without the prepossessions natural to those who studied law under the old system, should correct and not repeat their errors. Most especially is it true as to constitutional matters that the Constitution itself should be our guide, and not erroneous decisions, lest we bring upon ourselves the scriptural condemnation that we "make the Word of none effect by our traditions." Matt. 15:6; Mark 7:13. It is true that a justice of the peace cannot issue an injunction, and neither can this Court. But this is not because neither court has equitable jurisdiction, but because the statute has not given to either authority to issue this remedial writ as a matter of ordinary litigation.

2. If the title to land arises in an action before a justice of the peace under the Constitution the magistrate has no jurisdiction. If the justice holds that the title to land is in issue he must dismiss the action (Revisal, 1423), but the justice must hold whether it does or not, and the Constitution gives the right of appeal in either event. When the case gets into the Superior Court on such appeal, the whole spirit of the Constitution and of our statutes based thereon is that, being then in a court of general jurisdiction, the appeal will not be dismissed and the parties required to go out by one door of the courthouse to immediately come back in by another into the same courtroom, for the court being seized of jurisdiction will proceed to try the cause on its merits. This has been expressly provided by statute where a cause has been brought before the clerk, but on appeal it appears that he had no jurisdiction. In such case, the court will proceed to try the cause (Revisal, 614, and cases cited thereunder in Pell's Revisal), and even when the proceedings before the clerk were a

nullity (*In re Anderson,* 132 N. C., 243) and the judge can make amendments to give jurisdiction in that court. *Ewbank v. Turner,* 134 N. C., 81. The same is true as to appeals from a justice of the peace in criminal actions.

There is nothing in the Constitution which indicates that this rule does not apply to appeals in civil cases from a justice. It has been held that the proper course in all appeals to the Superior Court, independent of any statute, is not to dismiss in that court, but to make the proper amendments and proceed. This principle was held by *Smith, C. J.,* for the Court in *McMillan v. Reeves,* 102 N. C., 559, citing *West v. Kittrell,* 8 N. C., 493, and *Boing v. R. R.,* 87 N. C., 360. There have been decisions since to the contrary, but not without objection thereto being made. See concurring opinions in *Unitype v. Ashcraft,* 155 N. C., 71; *Wilson v. Ins. Co., ib.,* 176-178, and cases there cited; *Cheese Co. v. Pipkin, ib.,* 401; *S. v. McAden,* 162 N. C., 578; *McIver v. R. R.,* 163 N. C., 546, and dissenting opinion in *McLaurin v. McIntyre,* 167 N. C., 355, 356.