IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-444

No. COA21-328

Filed 5 July 2022

Durham County, No. 19 CVS 3039

JOSE CABRERA and JOSE CABRERA JR., Plaintiffs,

v.

HARVEST STREET HOLDINGS, INC.; SHOP & GO, LLC; WALTER CABRERA; LUCIANO CABRERA; and GREGORIO PAZ, Defendants.

Appeal by Plaintiffs from orders entered 25 July 2019 and 24 February 2021 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 12 January 2022.

*Austin Law Firm, PLLC, by John S. Austin, for Plaintiff-Appellants.*

*Roberti, Wicker, Lauffer & Cinski, P.A., by Samuel Roberti, for Harvest Street Holdings, Inc, Walter Cabrera, and Gregorio Paz, Defendant-Appellees.*

WOOD, Judge.

¶ 1    Jose Cabrera ("Plaintiff Cabrera") and Jose Cabrera Jr. ("Plaintiff Cabrera Jr.") (collectively, "Plaintiffs") appeal from an order granting summary judgment to Defendants. Plaintiffs also appeal a separate order denying their motion for a temporary restraining order and a preliminary injunction. On appeal, Plaintiffs argue 1) a genuine issue of material fact exists concerning the validity of a purported transfer of the property in dispute (the "Property"), and 2) the trial court erred in

denying their motion for a temporary restraining order and preliminary injunction. After a careful review of the record and applicable laws, we affirm the orders of the trial court.

## I.    Factual and Procedural Background

¶ 2        In 2004, Plaintiff Cabrera rented a portion of the Property from Nelson Banegas.  Six years later, Plaintiff Cabrera also began renting a portion of the Property from Shop & Go, LLC ("Defendant Shop & Go").  Plaintiff Cabrera began operating his auto mechanic shop, CGM Cabrera, there.

¶ 3        At some point thereafter, Defendant Shop & Go's owner, Grady "Buddy" Harris, became interested in selling the Property to Plaintiff Cabrera.  Plaintiff Cabrera discussed this opportunity with his family members, Luciano Cabrera ("Defendant Luciano") and Walter Cabrera ("Defendant Walter"), and ultimately asked them to join him in the purchase of the Property.

¶ 4        After negotiations, Defendant Shop & Go entered into an option to purchase contract for the Property with Plaintiff Cabrera, Defendant Luciano, and Defendant Walter on April 15, 2013 (the "Option Contract").  The Option Contract terms provided Plaintiff Cabrera and Defendants Luciano and Walter "accept as lessees" the Property from May 1, 2013 to December 1, 2024 and pay a total of $2,400.00 per month.  Further terms provided,

>        that if any monthly installment of rental [sic] as herein

> called[,] . . . be and remain overdue and unpaid for ten (10) days at any time during such default, party to the first part [Defendant Shop & Go] may at its option terminate this Lease and Option Contract and demand and receive possession of said property.
>
> . . .
>
> [I]t is further agreed that provided all rentals theretofore due have been paid, parties of the second party may at any time during the term of this lease elect to purchase said property for the price of $150,000.00 . . . . In absence of earlier purchase, title to real property shall be delivered unto said parties . . . upon payment in full of the above . . . referenced sales price according to the terms specified above. At that time or earlier delivery upon prepayment of rental to be applied on said purchase price, [Defendant Shop & Go] . . . shall deliver title to parties of the second part free from incumbrances at time of closing.

At no point did any party record the Option Contract in the Register of Deeds.

¶ 5    After Plaintiff Cabrera signed the Option Contract, he began subletting portions of the Property and managing rental payments. A few years later, Defendant Luciano decided he no longer wanted to be a party to the Option Contract. In May 2017, he assigned his one-third undivided interest in the Property to Plaintiff Cabrera's son, Plaintiff Cabrera Jr. Under the terms of the assignment, Plaintiff Cabrera Jr. "accepts and assumes from Luciano Bangas Cabrera . . . all of the Assignor's rights and obligations under the provisions of that Lease Option Contract dated April 15, 2013 referred to hereinabove." This assignment was then recorded in the Durham County Register of Deeds.

¶ 6 Following this assignment, Plaintiff Cabrera intended to enter into a contract to sell his and Plaintiff Cabrera Jr.'s respective interests in the Property to Gregorio Paz ("Defendant Paz") and Defendant Walter. At the time, Defendant Walter's wife, Eliana A. Agudelo-Cabrera, was a Notary Public for North Carolina. Because of Eliana's position, Plaintiff Cabrera and Defendants Walter and Paz all agreed Eliana would prepare the contract of sale. Eliana then, in turn, prepared a contract of sale in both English and Spanish for the parties to sign.

¶ 7 On February 1, 2019, Plaintiffs Cabrera and Cabrera Jr. purportedly entered into the prepared contract of sale with Defendants Paz and Walker (the "2019 Contract."). The 2019 Contract provided,

> Jose Luis Cabrera and son Jose Luis Cabrera Jr. agree to sell their part of ownership of . . . [the Property] for the amount of $140,000.00. Jose Luis Cabrera is receiving the total amount of $77,000.00 as a down payment, that leaves a balance of $63,000.00 which will be pay [sic] in amounts of $2,000.00 every 15th of every month until [sic] balance is paid in full.

However, at the time the parties entered into the 2019 Contract, Plaintiff Cabrera Jr., lived in Houston, Texas and did not personally sign his name. Plaintiff Cabrera signed his own name on behalf of Plaintiff Cabrera Jr. Eliana then notarized the contract after all parties signed it.

¶ 8 When Jose Cabrera Jr. became aware of the 2019 Contract, he told his father that he did not consent to the sale and asked his father to void the 2019 Contract.

Thereafter, Plaintiff Cabrera informed Defendants Walter and Paz that he and Plaintiff Cabrera Jr. wanted to void the 2019 Contract, but they refused to void the contract.

¶ 9 A few months later, on May 23, 2019, Defendants Walter and Paz decided to exercise the option to purchase the Property under the Option Contract. At the same time, Defendant Paz's attorney formed Harvest Street Holdings, LLC ("Defendant Harvest Street Holdings"), listing Defendants Paz and Walter as the company's owners. Acting as Defendant Harvest Street Holdings, Defendants Paz and Walter exercised the option to buy under the Option Contract with Shop & Go and purchased the Property in May 2019. The same day, Defendant Shop & Go conveyed its interest in the Property to Defendant Harvest Street Holdings. This deed was promptly recorded in the Durham County Register of Deeds. Prior to Defendant Harvest Street Holdings' purchasing the Property, Jose Cabrera had paid a total of $168,000.00 under the terms of the Option Contract. However, he stopped paying all rent due on the Property after February 2019 but continued to remain in possession of the Property.

¶ 10 On June 20, 2019, Plaintiffs filed a complaint with the trial court seeking declaratory judgment, quiet title, and *quantum meruit*, and they filed a motion for a temporary restraining order and preliminary injunction. On July 10, 2019, a hearing was held concerning Plaintiffs' motion for a temporary restraining order and

preliminary injunction. The trial court subsequently entered an order denying Plaintiffs' motion on July 25, 2019. On December 22, 2020, Defendant Harvest Street Holdings notified Plaintiffs it was terminating their lease because they had failed to pay rent since May 22, 2019. The following month, Defendants Harvest Street Holdings, Walter, and Paz moved for summary judgment, arguing there was no genuine issue of material fact.

¶ 11 On February 24, 2021, the trial court entered an order granting Defendants' motion for summary judgment. Plaintiffs filed a timely notice of appeal of both the July 25, 2019 and February 24, 2021 orders.

## II. Discussion

¶ 12 Plaintiffs raise several arguments on appeal. Each will be addressed in turn.

### A. Summary Judgment

¶ 13 We review a trial court's order for summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted). "Under a *de novo* review, the . . . court considers the matter anew and freely substitutes its own judgment for" that of the trial court. *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (cleaned up) (citing *Sutton v. North Carolina DOL*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, R. 56(c).

¶ 14 "The party moving for summary judgment has the burden of establishing the lack of any triable issue." *Cater v. Barker*, 172 N.C. App. 441, 444, 617 S.E.2d 113, 116 (2005) (quoting *Collingwood v. General Electric Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)), *aff'd,* 360 N.C. 357, 625 S.E.2d 778 (2006). When reviewing a summary judgment order, we view the evidence "in the light most favorable to the non-movant." *Baum v. John R. Poore Builder, Inc.*, 183 N.C. App. 75, 80, 643 S.E.2d 607, 610 (2007) (citing *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 26, 588 S.E.2d 20, 25 (2003)); *see Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975).

### 1. *Quiet Title*

¶ 15 Plaintiffs first allege the trial court erred by granting summary judgment to Defendants as to their claim to quiet title. We disagree.

¶ 16 An action to quiet title "may be brought by any person against another who claims an estate or interest in real property adverse to such person for the purpose of determining such adverse claims[] . . . ." N.C. Gen. Stat. § 41-10 (2021); *see also Resort Development Co. v. Phillips*, 278 N.C. 69, 77 178 S.E.2d 813, 818 (1971) ("The beneficial purpose of the Statute (G. S. 41-10) is to free the land of the cloud resting upon it and make its title clear and indisputable[] . . . ."); *Plotkin v. Merchants' Bank*

*& Trust Co.*, 188 N.C. 711, 714, 125 S.E. 541, 542 (1924) (holding in a suit to quiet title, the Plaintiff "is not demanding possession of the land nor are his rights put in issue. He demands judgment that the defendant has no right, title or interest in the land adverse or superior to him[]"). In order to prevail on a claim to quiet title, first "the plaintiff must own the land in controversy, or have some estate or interest in it and . . . second is that the defendant must assert some claim to such land adverse to the plaintiff's title, estate or interest." *Wells v. Clayton*, 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952) (citations omitted); *see Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997).

¶ 17        In the present case, Plaintiffs contend the 2019 Contract failed to convey their contractual interest under the Option Contract to Defendants Paz and Walter, and as such, they have retained an interest in the 2019 Contract and the Property. Generally, option contracts "do not of themselves create any interest in the property, but only amount to an offer to create or convey such an interest when the conditions are performed, and working a forfeiture when not strictly complied with." *Mizell v. Dennis Simmons Lumber Co.*, 174 N.C. 68, 71, 93 S.E. 436, 438 (1917) (citations omitted); *see also Winders v. Kenan*, 161 N.C. 628, 633, 77 S.E. 687, 689 (1913) ("Contracts of this character, being unilateral in their inception, are construed strictly in favor of the maker, because the other party is not bound to performance, and is under no obligation to buy, and it is generally held that time is of the essence of such

a contract, and that the conditions imposed must be performed in order to convert the right to buy into a contract of sale."); *Sharpe v. Sharpe*, 150 N.C. App. 421, 423, 563 S.E.2d 285, 287 (2002) ("The exercise of an option is merely the election of the optionee to purchase the property." (internal quotation marks omitted)).

¶ 18        In order to receive conveyance of a property subject to an option contract, the optionee must "not only accept the offer[,] but pay or tender the price within the prescribed time, but payment or tender is not essential unless it is a condition precedent." *Kettler v. Martin*, 241 N.C. 369, 372, 85 S.E.2d 314, 317 (1955) (quotation omitted); *see Winders*, 161 N.C. at 633-34, 77 S.E. at 689. A "mere notice of an intention to buy or that the party will take the property" in an option contract "does not change the relations of the parties." *Kettler*, 241 N.C. at 372, 85 S.E.2d at 317 (quoting *Winders*, 161 N.C. at 634, 77 S.E. at 689). In other words, until the option is exercised, the optionee does not hold any property interest to the property in question.

¶ 19        Concerning the interests held by Plaintiffs in this case, Plaintiffs' interests that were purportedly transferred under the 2019 Contract were their rights under the Option Contract. The Option Contract only designates Plaintiffs as lessees of the Property. We note that prior to Defendant Harvest Street Holdings' purchasing the Property, Jose Cabrera had paid a total of $168,000.00 in rent under the terms of the Option Contract; however, title to the Property would only be conveyed should the

lessees "elect to purchase said property for the price of $150,000.00 . . . ." At no time, either prior to or after signing the 2019 Contract, did Plaintiffs exercise their option to purchase. As such, because our Supreme Court has held option contracts do not convey an interest in real property until the option is exercised, we hold Plaintiffs did not yet have an interest in the Property pursuant to the Option Contract. *See Winders v. Kenan*, 161 N.C. 628, 77 S.E. 689 (1913); *Mizell v. Dennis Simmons Lumber Co.*, 174 N.C. 68, 93 S.E. 436 (1917).

¶ 20        In their brief, Plaintiffs spend a considerable amount of time arguing why the 2019 Contract is invalid. However, such an argument is immaterial in this case. First, because we conclude the Option Contract did not give any party thereto an interest in the Property, the interests Plaintiffs purportedly transferred in the 2019 Contract, if any, would only be the right to purchase the Property under the Option Contract. Thus, even if the 2019 Contract was invalid, Plaintiffs would only possess an option to purchase the Property under the Option contract. Because it is firmly established that an option contract does not create an interest in real property, Plaintiffs would not have had an interest in the Property regardless of whether they transferred their interest per the 2019 Contract. Furthermore, notwithstanding whether the 2019 Contract is valid, Defendant Walter at all times had a right to purchase the Property per the terms of the Option Contract; as such, Defendant Walter's subsequent purchase of the Property with Defendant Paz, acting as

Defendant Harvest Street Holdings, was permissible.

¶ 21     Because Plaintiffs did not have an interest in the Property under the Option Contract, a suit to quiet title fails as to the first element: the person "own[s] the land in controversy or . . . [has] some estate or interest in it." *Wells*, 236 N.C. at 107, 72 S.E.2d at 20. Plaintiffs neither owned the Property nor had any real property interest in it under the terms of the Option Contract. Therefore, we hold the trial court did not err by granting summary judgment to Defendants as to Plaintiffs' action to quiet title.

### 2. *Quantum Meruit*

¶ 22     Plaintiffs next argue the trial court erred by granting summary judgment to Defendants on their claim for *quantum meruit*. We disagree.

¶ 23     "In order to prevent unjust enrichment, a plaintiff may recover in *quantum meruit* on an implied contract theory for the reasonable value of services rendered to and accepted by a . . . [defendant]." *Waters Edge Builders, LLC v. Longa*, 214 N.C. App. 350, 353, 715 S.E.2d 193, 196 (2011) (quoting *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311, 563 S.E.2d 47, 52 (2002)). A claim in *quantum meruit* "operates as an equitable remedy based upon a quasi contract or a contract implied in law." *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) (citing *Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 578, 412 S.E.2d 1, 7 (1992)). A contract implied in law or a quasi contract is "not a contract."

*Paul L. Whitfield, P.A.*, 348 N.C. at 42, 497 S.E.2d at 415 (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)); *see Waters Edge Builders, LLC v. Longa*, 214 N.C. App. 350, 353, 715 S.E.2d 193, 196 (2011).

¶ 24        If an express contract exists between the parties, then "the contract governs the claim and the law will not imply a contract." *Booe*, 322 N.C. at 570, 369 S.E.2d at 556 (citing *Ranlo Supply Co. v. Clark*, 247 N.C. 762, 765, 102 S.E.2d 257, 259 (1958)); *see MORGANTON MFG. & TRADING CO. v. CREWS*, 165 N.C. 285, 290, 81 S.E. 418, 420 (1914). As such, "*quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties." *Paul L. Whitfield, P.A.*, 348 N.C. at, 42, 497 S.E.2d at 415 (citing *Booe*, 322 N.C. at 570, 369 S.E.2d at 556). "Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment." *Id.* (citing *Booe*, 322 N.C. at 570, 369 S.E.2d at 556).

¶ 25        Therefore, the focus "in the *quantum meruit* context[] is on whether there is an express contract on the subject matter at issue and not on whether there was a contract between the parties." *Ron Medlin Constr. v. Harris*, 199 N.C. App. 491, 495, 681 S.E.2d 807, 810 (2009) (emphasis omitted); *see Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713-14, 124 S.E.2d 905, 908 (1962) ("There cannot be an express and an implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law interposes and raises a promise. No

agreement can be implied where there is an express one existing[] . . . .").

¶ 26 We find *Vetco Concrete Co. v. Troy Lumber Co.* to be similar to the case before us. There, plaintiff entered into an express agreement with a third party to furnish materials necessary to construct residences on lots owned by defendant. *Id.* at 713, 618 S.E.2d at 907. Although plaintiff and defendant never entered a contract requiring defendant to pay for its materials, it brought suit against defendant for outstanding payments under the theory of implied contract. *Id.* Our Supreme Court held since there was an express contract with a third party for the purchase of the materials, the trial court erred by submitting the case to the jury "on the theory of an implied contract on the part of the defendant to pay for materials sold and delivered to another under an express contract." *Id.* at 715, 124 S.E.2d at 909.

¶ 27 Our Supreme Court's decision in *Vetco Concrete Co. v. Troy Lumber Co.* is binding on the case *sub judice*. In the present case, Plaintiffs showed the existence of an express contract between Defendant Shop & Go and Defendant Walter, one of the founders of Defendant Harvest Street Holdings. The Option Contract specifically provided Plaintiffs and Defendant Walter were to pay Defendant Shop & Go a security deposit and approximately $2,400.00 in monthly rent. Because an express contract existed between Plaintiffs and Defendant Shop & Go, Plaintiffs may not now sue on the theory of an implied contract for amounts paid subject to this express contract. *Id.* Accordingly, since *quantum meruit* requires the existence of an implied

contract, the trial court did not err by granting summary judgment to Defendants on Plaintiffs' *quantum meruit* action.

**B. Temporary Restraining Order and Preliminary Injunction**

¶ 28    Finally, Plaintiffs contend the trial court erred by denying their motion for a temporary restraining order and preliminary injunction.  We disagree.

¶ 29    At the outset, we note  Plaintiffs' brief fails to argue their claim pertaining to a temporary restraining order.  N.C. R. App. P.28 ("The function of all briefs required or permitted by these rules is to define clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon.  The scope of review on appeal is limited to issues so presented in the several briefs.").  Thus, Plaintiffs' claim as to a temporary restraining order is deemed abandoned.

¶ 30    As to Plaintiffs' claim for a preliminary injunction, we review a preliminary injunction "essentially *de novo*."  *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 507, 606 S.E.2d 359, 362 (2004) (quoting *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 696 (1984)).  Since a preliminary injunction is an "extraordinary measure" it will only be issued

> (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of

litigation.

*Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (citing *Waff Bros., Inc. v. Bank of North Carolina, N.A.*, 289 N.C. 198, 204-05, 221 S.E.2d 273, 277 (1976); then citing *Pruitt v. Williams*, 288 N.C. 368, 372, 218 S.E.2d 348, 351 (1975); and then citing *Western Conference of Original Free Will Baptists v. Creech*, 256 N.C. 128, 139, 123 S.E.2d 619, 626 (1962)).

¶ 31 Here, Plaintiffs' claim for a preliminary injunction fails as to the first prong. As discussed *supra*, Plaintiffs were unable to show a likelihood of success on the merits. Therefore, the trial court did not err by denying Plaintiffs' motion for a preliminary injunction.

## III. Conclusion

¶ 32 Viewing the evidence in the light most favorable to Plaintiffs, we hold no triable issue exists as to their claims to quiet title and for *quantum meruit*. We hold the trial court properly granted summary judgment to Defendants. Likewise, since the Plaintiffs were unable to show a likelihood of success on the merits, we conclude the trial court properly denied Plaintiffs' motion for a preliminary injunction. As such, we affirm the order and judgment of the trial court.

AFFIRMED.

Judge DILLON and JACKSON concur.